# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Libertarian Party of Minnesota,
Chris Holbrook, Mason McElvain,
Chris Dock, and Brian McCormick,

          Plaintiffs,

vs

Steve Simon, in his official capacity
as the Minnesota Secretary of State,
or his successor,

        Defendant.

Case No. 19-CV-2312 (DSD-DTS)

**Plaintiffs' Summary Judgment
Memorandum of Law**

---

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

CONSTITUTIONAL, STATUTORY, AND RULE PROVISIONS
INVOLVED ...................................................................................2

  U.S. Constitution..........................................................................2

  Minnesota Statutes and Rules ......................................................2

STATEMENT OF FACTS ................................................................3

  Significant election dates. ............................................................3

  The Libertarian Party and association of members........................4

  Petitioning requirements and experiences in associating with
  others...........................................................................................5

  Covid-19 crystalizes the issues of minor political party
  petitioning...................................................................................8

ARGUMENT ..................................................................................9

I.    Based on undisputed facts the Libertarian Party as a
      Minnesota political party, and its' candidates, have had
      their respective rights violated under the First and
      Fourteenth Amendments. ...........................................................9

II.   A person signing a minor political party candidate's
      petition, is akin to a signature-vote to have that person
      placed on the general election ballot. ..................................... 10

III.  Ballot access laws must meet constitutional muster........................... 12

IV.   The 14-day window to obtain petition signatures is
      unconstitutional. ...................................................................... 19

V.    The lack of absentee balloting denies ballot access to
      petitioning minor political party candidates and is
      arbitrary and discriminatory under the Fourteenth
      Amendment. ........................................................................... 25

VI.   The inability to refute petition eligibility challenges by
      minor political party voters is discriminatory. ...................... 29

CONCLUSION............................................................................... 33

## INTRODUCTION

The Plaintiffs Libertarian Party of Minnesota, Chris Holbrook, Mason McElvain, Chris Dock, and Brian McCormick seek declaratory and prospective relief regarding certain Minnesota statutes, rules, and policies regarding primary elections and candidates classified as major political parties and minor political parties and treat them differently. The statutes include: Minnesota Statutes §§ 204B.07, subdivision 4 (the oath requirement); 204B.08, subdivision 3 (number of petition signatures); 204B.09, subdivision 1(a) (time period for federal, state and county candidate nominating petition filings); Minnesota Rules chapter 8205 (establishes requirements for petitions, including minor political party candidate nominating petitions); 203B.04 to 203B.15 (absentee balloting); Minnesota Statues §§ 203B.16 to 203B.27 (absentee balloting, e.g., overseas); Minnesota Rules chapter 8205 (establishes requirements for petitions, including minor political party candidate nominating petitions); Minnesota Rules Chapter 8210 (rules do not authorize absentee participation in the minor political party candidate nominating petition process). The arguments rely on the First and Fourteenth Amendments of the U.S. Constitution.

In the United States, eligible electors have a fundamental right to participate in elections with complete information. And, all who participate in the election process are to have an equal vote.

Yet, in Minnesota, the primary election process is fundamentally unfair, causing disparate treatment in favor of major political parties in violation of the U.S. Constitution's First and Fourteenth Amendments.

## CONSTITUTIONAL, STATUTORY, AND RULE PROVISIONS INVOLVED

### U.S. Constitution

The First Amendment incorporated against state and local governments by the Fourteenth Amendment:

> Congress shall make no law…abridging the freedom of speech, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The Fourteenth Amendment's Due Process and Equal Protection Clauses apply to state and local governments:

> Section 1… nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

### Minnesota Statutes and Rules

- Minnesota Statutes § 204B.07, subdivision 4:

  > "I solemnly swear (or affirm) that I know the contents and purpose of this petition, that I do not intend to vote at the primary election for the office for which this nominating petition is made, and that I signed this petition of my own free will."
  > …
  > An individual who, in signing a nominating petition, makes a false oath is guilty of perjury.

- Minnesota Statutes § 204B.08, subdivision 3(a), (b), and (c): governs the number of signatures required on a nominating petition.

- Minnesota Statutes § 204B.09, subdivision 1(a) states:

  > [N]ominating petitions for county, state, and federal offices filled at the state general election shall be filed not more than 84 days nor less than 70 days before the state primary.

- Minnesota Statutes §§ 203B.04 to 203B.15: governs absentee balloting for eligible electors

- Minnesota Statues §§ 203B.16 to 203B.27: governs absentee balloting for military and overseas eligible electors

- Minnesota Rules chapter 8205: establishes requirements for petitions, including minor political party candidate nominating petitions.

- Minnesota Rules Chapter 8210: governs absentee balloting.

- Absentee Voting Administration Guide, § 3.3.2.1 "Absentee Voting Management Methods:" provides guidelines and policies for absentee balloting.

## STATEMENT OF FACTS

### Significant election dates.

In Minnesota, for the 2020 general election cycle, the primary election for major political party candidates is August 11th. For minor political party candidates, their period for attaining the minimum number of petition candidate signatures to appear on the general election ballot is 14 days—May 19th to June 2nd. This is the same 14-day period for major political party

candidates to file for office. The general election will be held on Tuesday, November 3, 2020.[1]

**The Libertarian Party and association of members.**

The Libertarian Party of Minnesota is a minor political party under Minnesota law.[2] Each of the individual Plaintiffs, Chris Holbrook, Mason McElvain, Chris Dock, and Brian McCormick, are Libertarian Party members and have either run for elected office or are potential future candidates for elected office as a Libertarian candidate in the 2020 election or future elections.[3] As members of the Party, they are associated with the Party, and as candidates or potential candidates wish to be associated with the Party.[4]

Holbrook, McElvain, Dock, and McCormick have signed Libertarian Party candidate petitions and have sought signatures from eligible voters for other petitioning candidates. In this regard, as signatories of a minor political party's petition they too, associate with the particular petition candidate as they seek to have that candidate appear on the general election ballot.[5]

---

[1] Chris Holbrook Decl. ¶¶14–17 (Apr. 7, 2020).
[2] Plts. Amend. Compl. ¶70; Holbrook Decl. ¶3. (Apr. 2, 2020); Minn. Stat. § 200.02, subd. 23(a).
[3] *E.g.,* Holbrook Decl. ¶33; M. McElvain Decl. ¶¶12, 13 (Apr. 2, 2020); C. Dock Decl. ¶4 (Apr. 2, 2020); McCormick Decl. ¶¶3–4 (Apr. 7, 2020).
[4] Holbrook. ¶33; McElvain ¶¶4–6; Dock ¶¶5–8; McCormick ¶¶4–8.
[5] *Id.*

4

**Petitioning requirements and experiences in associating with others.**

Likewise, they understand that with signing a petition they cannot vote in a major political party's primary election (either Republican or Democratic Parties as examples) for the same office. To do so, could subject them to criminal prosecution for perjury. Regardless, because by their petition signature, they have given up their right to vote in a major political party primary to get a candidate onto the general election ballot, they consider their respective signatures on a Libertarian Party petition to be akin to a vote. Their petitioning "signature-vote" is similar to a vote cast during a primary—helping a candidate appear on the general election ballot.[6]

In an election year in Minnesota, potential candidates of a minor political party, must attain a certain number of registered eligible voter[7] signatures before the candidate's name will be placed on the general election ballot in November. For example, a Libertarian Party presidential and vice presidential candidate must attain 2,000 signatures on a nominating petition;[8] U.S. Senate, 2,000 signatures; a state office voted state-wide (e.g.,

---

[6] Holbrook. ¶¶24–28; McElvain ¶¶6–7; Dock ¶¶9–10; McCormick ¶6.

[7] An eligible voter is defined under Minnesota Statutes § 201.014, subdivision 1. An eligible voter must be registered under Minnesota Statutes § 201.18. Plts. Compl. ¶¶71—74.

[8] Minn. Stat. § 204B.08, subd. 3(a); Plts. Compl.¶87.

Governor, Attorney General), 2,000 signatures; county or legislative office;

500 signatures.

> (a) for a federal or state office voted on statewide, one percent of the total number of individuals voting in the state at the last preceding state general election, or 2,000, whichever is less;
>
> (b) for a congressional office, five percent of the total number of individuals voting in the district at the last preceding state general election, or 1,000, whichever is less;
>
> (c) for a county or legislative office, ten percent of the total number of individuals voting in the county or legislative district at the last preceding state or county general election, or 500, whichever is less....[9]

However, whatever office a potential Libertarian Party candidate may seek, but for the presidential nominating petition in 2020, each petitioning candidate has only 14 days to acquire the necessary number of eligible voter signatures—May 19th to June 2nd, the due date for filing an affidavit of candidacy.[10]

For the minor political party presidential nominating petition, that requires 2,000 eligible voter signatures, the time period in 2020 is from May 19th to August 18th.[11] The major political party primary occurred on March

---

[9] *See* Holbrook ¶¶18–23.
[10] Holbrook ¶14.
[11] SOS document on presidential primaries.

3, 2020. As previously noted, the general election will be held on November 3, 2020.

Nevertheless, if the minimum number of eligible voter signatures is not achieved by the filing date, the Libertarian Party petitioning candidate will not appear on the general election ballot. If the minimum number is achieved by the filing date, the Secretary of State's office reviews the petition. The Secretary's office confirms the eligibility of the signatories. If the person is found not eligible, the voter is subtracted from the total number of signatures attained. If after further review, the total number of eligible voters falls below the threshold number of voters needed, the petitioning candidate will not appear on the general election ballot.

Unlike the presidential nominating period that extends through to August, a Libertarian Party candidate's petitioning efforts end within 14 days. Moreover, if the candidate fails to achieve the required threshold number of signatures within that period, the candidate has no other option after the filing date to reach the threshold number.[12] There is no second chance. While major political party candidates can continue their primary campaigns to the primary election date, in Minnesota, on August 11, 2020, the "primary" for Libertarian Party candidates ends on June 2nd.[13]

---

[12] *E.g.* McCormick ¶19; McElvain ¶16; Holbrook ¶¶13, 37–39.
[13] *Id.;* Dock ¶¶19–20.

Moreover, the voter considering the petition will not necessarily know all the candidates running for that particular office because the deadline for the petition is the same as the major political party candidates filing deadline.[14] And, unlike major political party supporters in Minnesota, Libertarian Party supporters who wish to sign a candidate's petition, do not have absentee balloting available to them.[15]

### Covid-19 crystalizes the issues of minor political party petitioning.

With the advent of the unfortunate Covid-19 health crisis, it has crystalized the infirmities faced by minor political parties and petitioning candidates. The impact is felt not only by the Libertarian Party, but also with minor political parties, the Green Party of Minnesota[16] and the Independence-Alliance Party of Minnesota.[17] Each is familiar with the minor political party candidate petitioning process.[18] Even before the Covid-19 crisis, each party candidate who had not achieved the threshold number of signature-votes required or fell below the threshold number because certain voters were later found not eligible, they had no other option or alternative method to supplement those signature-votes after the 14-day window had

---

[14] Holbrook ¶36.
[15] *E.g.* Dock ¶ 18; McElvain ¶15.
[16] Trahern Crews Decl (Green Party) (Apr. 6, 2020).
[17] Philip Fuehrer (Independence-Alliance Party Decl. (Apr. 6, 2020).
[18] Crews ¶¶9–23; Fuehrer ¶¶5–18.

closed.[19] And with this crisis, obtaining signatures is next to impossible.[20] Health professionals suggested, that even with the best available individual protections, going door-to-door or having any other contact with the general public is ill-advised and against public safety, based on present knowledge of the virus.[21]

Yet, as one minor political party suggested, because of the laws for minor political party candidates and because the pandemic makes it virtually impossible to get the threshold number of signatures on a petition, a candidate has no chance of getting on the general election ballot but to seek out more signatories.[22]

## ARGUMENT

### I.   Based on undisputed facts the Libertarian Party as a Minnesota political party, and its' candidates, have had their respective rights violated under the First and Fourteenth Amendments.

This Court is familiar with summary judgment standards. Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a

---

[19] *.E.g.* Crews ¶17; Fuehrer ¶18.
[20] Holbrook ¶49; Crews ¶30.
[21] Emily Mellingen Decl. (Apr. 6, 2020).
[22] Fuehrer ¶25.

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining the merit of a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).

## II.   A person signing a minor political party candidate's petition, is akin to a signature-vote to have that person placed on the general election ballot.

When an eligible voter signs a minor political party's candidate petition to appear on the general election ballot, he is forfeiting his right to vote in a future primary election for that same elected office. The oath, required on the petition, requires the eligible voter to swear not to vote in the primary election and if he does so, could be subject to criminal prosecution for perjury. Minn. Stat. § 204B.04, subd. 4. Nominating petitions implicate the fundamental right to vote, thus the burdens of the petitioning process are subject to an analysis under the Equal Protection Clause. *E.g., Idaho*

*Coalition United for Bears v. Cenarrusa*, 342 F.3d 1073, 1077 (9th Cir. 2003) (comparing nominating and initiative petitions).

First, in a primary election, an eligible voter, casting a ballot in secrecy, votes for a candidate to appear on the general election ballot. There is no guarantee the candidate will win, but the vote has been cast for that purpose. By signing a Libertarian Party petition, the voter forfeits his right to vote in a primary election. The voter has cast his support by exercising a fundamental right by signing a petition to have that candidate appear on the general election ballot. Once "cast," like the primary elector, he cannot vote again. And, there is no guarantee the petitioning candidate will appear on the general election ballot. The same constitutional protections apply, as do other election laws regarding eligibility as explained later; therefore, a petition signature of an eligible voter is akin to a "vote," referred here, as a "signature-vote."

Second, unlike a voter in a primary election, the voter's ballot for a particular primary candidate is never disclosed. To the contrary, an eligible voter's choice of candidate by way of a nominating petition's signature-vote is not secret and is subject to disclosure under Minnesota's Government Data Practice's Act, chapter 13 to any one Minnesota voter who makes such a request.

And, in the March 3, 2020 presidential primary, voters were not subject to the same oath requirement about voting in the later presidential minor political party nominating process.[23] This is an example of one infirmity of the § 204B.07, subdivision 4's oath requirement as it reveals the unequal protection between two classes of voters of otherwise equal eligible voters and between minor and major political parties. Moreover, voters have refused to sign the candidate's petition because of the oath and threat of prosecution. Furthermore, because disclosure laws prevent access to presidential voter lists that are made available major political parties, the Libertarian Party may not assist potential voters from committing perjury when its presidential primary process begins in May. *See* Minn. Stat.  201.091, subd. 4a.

### III.    Ballot access laws must meet constitutional muster.

A state's ballot access laws are valid if they are necessary to further a compelling state interest. *American Party of* Texas *v. White,* 415 U.S. 767, 780 (1974); *Storer v. Brown,* 415 U.S. 724, 729–33 (1974).

A state's candidate eligibility requirements have an impact on voters' basic constitutional rights. *Anderson v. Celebrezze,* 460 U.S. 780, 786 (1983). The freedom to engage in association in order to advance beliefs and ideals is an inseparable aspect of the liberty that is assured by the Due Process Clause

---

[23] Plts. Compl. ¶361.

of the Fourteenth Amendment, which embraces freedom of speech. *NAACP v. Alabama,* 357 U.S. 449, 460 (1958). The right of a party or a citizen to a spot on the ballot is intertwined with the rights of voters and is entitled to protection. *Lubin v. Panish,* 415 U.S. 709, 716 (1974). An individual's right to vote is heavily burdened if he can choose from only two parties when there are other parties demanding a place on the ballot. *Williams v. Rhodes,* 393 U.S. 23, 31 (1968).

Notably, the U.S. Supreme Court has considered it "'too plain for argument,' for example, that a State may require parties to use the primary format for selecting their nominees, in order to assure that *intraparty competition* is resolved in a *democratic fashion.*" *California Democratic Party,* 530 U.S. at 572 *quoting Am. Party of Texas v. White,* 415 U.S. 767, 781 (1974); *see also Tashjian,* 504 U.S., at 237 (Scalia, J., dissenting).[24] Thus, a state "may limit each political party to one candidate for each office on the ballot and may insist that intraparty competition be settled before the general election by a primary election or by party convention." *Am. Party of Texas v. White,* 415 U.S. at 781. *See also Storer v. Brown,* 415 U.S. 724, 733–736 (1974).

---

[24] Emphasis added.

And while primaries and general elections have a strong interconnection as "a single instrumentality for choice of officers," there is a difference between the effect of a primary and that of the general election. *Smith v. Allwright,* 321 U.S 649, 660 (1944). As the Supreme Court has recognized, the right to vote in a primary election for the nomination of candidates without discrimination by the state is, like the right to vote in a general election, a right secured by the Constitution so that the same tests to determine the character of the discrimination or abridgement should be applied to a primary election as are applied to a general election. *Id.* at 661–62*; Terry v. Adams,* 345 U.S. 461 (1953).

The First Amendment of the U.S. Constitution protects the right of association for both the voter and the candidate:

> Congress shall make no law … prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

As the Minnesota Supreme Court has stated, that while "[t]he freedom of association is not enumerated in the U.S. Constitution but is a derivative right, recognized as necessary to make meaningful the enumerated First Amendment rights of speech, press, petition, and assembly. *In re GlaxoSmithKline plc,* 732 N.W.2d 257, 267–68 (Minn. 2007) *citing Metro. Rehab. Servs., Inc. v. Westberg,* 386 N.W.2d 698, 700 (Minn.1986) (*citing*

*NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 (1958)). "Effective

advocacy of both public and private points of view, particularly controversial

ones, is undeniably enhanced by group association." *Patterson,* 357 U.S. at

460. As the U.S. Supreme Court has also concluded, "'implicit in the right to

engage in activities protected by the First Amendment [is] a corresponding

right to associate with others in pursuit of a wide variety of political, social,

economic, educational, religious, and cultural ends.'" *Roberts v. U.S. Jaycees,*

468 U.S. 609, 622 (1984).

The Fourteenth Amendment guarantees equal protection under the

laws and due process.

To determine whether a statute violates the Equal Protection Clause,

the Court considers "the facts and circumstances behind the law, the

interests which the State claims to be protecting, and the interests of those

who are disadvantaged by the classification." *Williams v. Rhodes*, 393 U.S.

23, 30 (1968). In analyzing the Plaintiffs' equal protection challenge, then,

the interests and burdens at issue are the same as those that were balanced

in their First and Fourteenth Amendment challenges discussed above. In the

context of equal protection, then, the Court must consider "whether the law

disadvantages one group over another so as to result in unequal treatment

and whether this unequal treatment is justified by a compelling interest."

*Libertarian Party of N. Dakota v. Jaeger,* 659 F.3d 687, 702 (8th Cir. 2011).

Although "reasonable election regulations may, in practice, favor the traditional two-party system," *Green Party of Arkansas v. Martin*, 649 F.3d 675, 684 (8th Cir. 2011) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997)), they may not serve the purpose of allowing the same two parties "to retain a permanent monopoly on the right to have people vote for or against them." *Williams*, 393 U.S. at 32. "Competition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms. New parties struggling for their place must have the time and opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past." *Id.*

The claims of the Plaintiffs are made in the context of a facial or as applied challenge. A plaintiff brings a facial challenge "to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." *City of Chicago v. Morales*, 527 U.S. 41, 55 n. 22 (1999). By contrast, "[a]n as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Phelps–Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017) (quoting *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004) ). A successful as-applied challenge, then, means "the statute may not be applied to the challenger, but is otherwise enforceable." *Id.* (quoting *Klobuchar*, 381

F.3d at 790). The claims at hand "'ha[ve] characteristics of both' challenges." *Iowa Right to Life Committee, Inc. v. Tooker*, 717 F.3d 576, 587 (2013) (concluding that the court could "consider each challenged...requirement in isolation, and, if necessary, apply the 'normal rule that partial, rather than facial, invalidation is the required course' ").[25]

And "[i]n crafting an appropriate remedy, the Court seeks to go no further than necessary to address the constitutional wrong supported by this record." *Gerlich v. Leath*, 152 F.Supp.3d 1152, 1180 (S.D. Iowa 2016) (citing *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982), *Coca–Cola Co. v. Purdy*, 382 F.3d 774, 790 (8th Cir. 2004)).

Indeed, ballot access cases have emphasized that the states "have important interests in protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections." *Clements*

---

[25] "[T]he 'label is not what matters.'" *Tooker*, 717 F.3d at 587 (*quoting Doe v. Reed,* 561 U.S. 186, 194 (2010) and *citing* Citizens United v. Federal Election Commission, 558 U.S. 310, 331 (2010) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional *challenge*.")). "Instead, the 'important' inquiry is whether the 'claim and the relief that would follow... reach beyond the particular circumstances of the [ ] plaintiffs." *John Doe No. 1 v. Reed*, 561 U.S. 186, 193 (2010)

*v. Fashing*, 457 U.S. 957, 964–65 (1982) (citations omitted). Likewise, in recognizing these interests, the Supreme Court has upheld "reasonable level-of-support requirements and classifications that turn on the political party's success in prior elections." *Id.* at 965. However, the classifications created by law and as applied to the Libertarian Party, its candidates, and voter supporters, does not explain the detrimental effect of minor party candidates to gain access to the general election ballot. *See Libertarian Party v. Bond*, 764 F.2d 538, 541 (8th Cir. 1985) ("It has been recognized, however, that the entire election scheme must be analyzed to determine whether undue constraints on access to the ballot exist."). And in analyzing the entire primary election scheme, Minnesota does place undue constraints on the Libertarian Party, as a minority political party, and its candidates to gain access to the general election ballot.[26]

Minnesota has not made a concerted effort to allow competition to the two-party system by "afford[ing] minority political parties a real and essentially equal opportunity for ballot qualification," *Am. Party of Texas v. White*, 415 U.S. 767, 788 (1974). Here, the primary election process for minor political parties freezes the status quo of a two party system and the constraints impede access to the ballot.

---

[26] *E.g.* Holbrook ¶¶33–34.

18

IV.   **The 14-day window to obtain petition signatures is unconstitutional.**

Generally, Minnesota's primary election scheme works like this: candidates of major political parties have primary elections, if necessary, in August of the general election year with the winning primary candidates' names being placed on the general election ballot. If there is only one major political party candidate for the office, there is no primary election and that one major political party candidate appears on the general election ballot.[27] Minor political party candidates, such as Libertarian Party candidates, do not have primary elections in August.[28] Instead, to appear on the general election ballot, the candidate must obtain a threshold number of eligible electors' signatures on minor political party candidate nominating petitions during a 14-day window 65 days before the primary election. The threshold number is dependent upon the elected office sought.[29]

Minnesota Statutes § 204B.09, subdivision 1(a) governs the time period for federal, state and county candidate nominating petition filings:

> [N]ominating petitions for county, state, and federal offices filled at the state general election shall be filed not more than 84 days nor less than 70 days before the state primary.

---

[27] Plts. Comp. ¶207.
[28] Holbrook ¶35.
[29] *Id.*¶208; Holbrook ¶¶18–23.

In Minnesota for 2020, candidates for federal or state offices, must file with the Office of the Minnesota Secretary of State between May 19, 2020 and June 2, 2020. May 19th to June 2nd is 14 days. *Id.* The 14-day period also includes the Memorial Day weekend. The 14-day period remains the same length for future elections except that the actual calendar date may be different than those stated for 2020.[30] Notably, by law, a minor political party candidate cannot start obtaining petition signatures until the first date of filing, in 2020, May 19th.

The Libertarian Party candidates seeking signatures for their respective nominating petitions do not have access to the same pool of electorates during the May and early June 14 day-period as the major political party primary candidates have access to through to their respective August primary day.[31] The electorate is different in May than the electorate is 65 days later in August—*e.g.,* people move into the district, become eligible to vote or turn 18 years of age.[32]

Notably, there is no subsequent or supplemental process or second chance for Libertarian Party candidates to obtain additional petition signatures after the June filing deadline for filing of political party candidate

---

[30] *Id.*¶209; *e.g.* McCormick ¶14. ¶
[31] *Id.*¶210.
[32] *Id.*¶213.

nominating petitions. If they do not reach the minimum amount of signatures, the candidate cannot file. If a submitted petition falls short of the minimum required signature amount because voters are later found ineligible to be counted, the candidate is not placed on the general election ballot.

Similarly, there is no subsequent or supplemental process for electors to change their mind after the minor political party candidate 14-day filing deadline 65 days before the major party primary elections (1) if electors want to rescind their signature on the minor political party candidate nominating petition so they can vote in the primary election, nor (2) if they want to add their signature on the minor political party candidate nominating petition giving up their right to vote in the primary election.[33]

Further, the elector who signs the petition must swear, under penalty of felony perjury prosecution, that they will not vote in the upcoming primary election, even though the elector does not have complete information about all the candidates running in the major political party primary. The cause for the electors' incomplete information is the filing deadline for the minor political party candidate nominating petitions is the same as the filing deadline for major political party candidates' affidavits of candidacy. In other

---

[33] *Id.*¶212.

words, the elector must sign the petition and make an oath not to vote in the primary election without knowing who the candidates in the primary election are.[34]

The end of the "primary" date for obtaining the number of signatures on a Libertarian Party's candidate's petition is not the same as that of a major political party primary and is of itself violative of the equal protection clause. The dates in which *all* persons seeking elected office must file their respective affidavit of candidacy is within the 14-day period (for any election year) but in 2020 is between May 19th and June 2nd, 2020. However, the circulating of a minor political party's petition to acquire the necessary signature-votes is 14 days, due no later than June 2nd, as opposed to a major political party's deadline from June 2nd (at the latest) to August 11th, the 2020 state primary election date—70 days later—to acquire the necessary votes to have their name appear on the general election ballot where the person has a challenger. If there is no challenger, there is no primary and the candidate proceeds to the general election ballot. Furthermore, there are no "write-in" votes for minor political party candidates on the August primary ballot since the primary is exclusively that of a major political parties.

*Compare, Jenness v. Fortson,* 403 U.S. 431, 433–34 (1971) (Total time

---

[34] *Id.*¶214–16.

allowed for circulating a nominating petition is 180 days for a minor political party candidate and is filed on the same deadline that a candidate filing in a party primary must meet (and allows for write-in votes) thus, is not volative of equal protection clause.)

While some minor political candidates have met the burden of attaining the necessary number of petition signatures within the 14-day period, and others have failed, it does not change the analysis.[35] We cannot discern or find any reasonable rationale for the state to restrict Libertarian Party candidates to this 14-day window to acquire from anywhere between 500 signature-votes for state legislative office to 2,000 signature-votes for state Governor.

This lack of any reasonable rationale is particularly highlighted in the 2020 presidential primary contest. While major political parties had a presidential primary on March 3, 2020, state law allows minor political parties presidential candidates to obtain 2,000 signature-votes on their petition from May 19th (the first date in which signatures can be collected) to August 18, 2020, 77 days before the general election. Minn. Stat. § 204B.09, subd. 1(c). This amounts to a 92-day time frame.

---

[35] *E.g.* Mellingen ¶¶6–7; Crews ¶6.

In short, there is no cognizable harm to major political party candidates by extending the date of minor political party petition threshold signature deadline to the election date of the state primary. This would move the deadline from June to August.[36]

While we do not object to either the requirement to file an *affidavit of candidacy* as must all other candidates, or the actual number of signature-votes required on the petition itself, the constitutional challenge here, is the arbitrary discriminatory 14-day time frame to obtain the necessary signatures. The candidates have chosen to associate with a minor political party, and the constraints imposed is *because* of the association with a minor political party. And eligible voters who seek to associate with the minor political party candidate also have their right to associate violated *because they choose to associate* with the minor political party.[37]

If the state was concerned about eliminating frivolous candidates from the ballot, then the time frame inconsistencies between state and federal elected offices and the presidential primary process for minor political party candidates is unexplainable. *Cf. Am. Party of Tex.,* 415 U.S. at 782 (A state's interest in eliminating frivolous candidates from the ballot is "sufficiently implicated to insist that political parties appearing on the general ballot

---

[36] Filing an affidavit of candidacy could remain the same—in 2020, June 2nd.
[37] Holbrook ¶9.

demonstrate a significant, measurable quantum of community support.").
Even if the Secretary suggests that the cut-off is necessary to allow for
confirming the eligibility of the signatories, the June 2nd filing deadline
remains 70 days before the August state major political party primary
election, 108 days before absentee ballots are prepared for distribution in
September, and 153 days before the November general election.

The status quo of the two-party system is unconstitutionally preserved
in light of the fact that a Libertarian Party petitioning candidate has no other
option, alternative, or second chance to supplement his petition after the
filing deadline. The existing law establishing the filing deadline, Minnesota
Statutes § 204B.09, subdivision 1(a) effectively bars all Libertarian Party
candidates from the general election ballot. As diligent as those candidates
are in gathering signatures, it remains unreasonable for them to achieve the
necessary required petition signatures in such a short time-frame that far out
before the election. *Libertarian Party,* 710 F.2d at 793; *Storer v. Brown,* 415
U.S. 724, 742 (1974). The law is violative of the First and Fourteenth
Amendments.

### V.   The lack of absentee balloting denies ballot access to petitioning minor political party candidates and is arbitrary and discriminatory under the Fourteenth Amendment.

Minnesota Statutes § 204B.09, subdivision 1(a) governs the time period
for federal, state and county candidate nominating petition filings and for

minor political parties. This law establishes the 14-day period to attain the minimum number of petition signatures as found under § 204B.08, subdivision 3(a), (b), and (c). The Secretary of State has adopted Minnesota Rules chapter 8205, which establishes requirements for minor political party candidate nominating petitions.

"It is important, at the outset, to consider the nature of absentee voting in the election process. The opportunity of an absentee voter to cast his vote at a public election by mail has the characteristics of a privilege rather than of a right. Since the privilege of absentee voting is granted by the legislature, the legislature may mandate the conditions and procedures for such voting." *Bell v. Gannaway,* 227 N.W.2d 797, 802 (Minn. 1975) (citations omitted); *KSTP-TV v. Ramsey County,* 806 N.W.2d 785, 790 (Minn. 2011) ("Voting in absentia is a privilege…."). In *Bell v. Gannaway,* the Minnesota Supreme Court explained that "voting by absentee ballot is a privilege, not a right, and affirmed the mandatory nature of absentee voting requirements." *Gannaway,* 227 N.W.2d at 802-03. The Court reiterated that because "'the privilege of absentee voting is granted by the legislature, the legislature may mandate the conditions and procedures for such voting.'" *Id.*, 227 N.W.2d at 802 *quoting In re Contest of Gen. Election Held on November 4, 2008, for Purpose of Electing a U.S. Sen. from State of Minnesota,* 767 N.W.2d 453, 462 (Minn. 2009).

26

Under Minnesota election law, an otherwise qualified voter may vote by an absentee ballot in either a primary or general election. Minn. Stat. § 203B.04. However, in a primary election, while absentee balloting is allowed for voters who support major political party candidates, it is not available for voters who support minor political party candidates.

As explained, the Libertarian Party candidate must file his affidavit of candidacy with the required number of signatures by June 2nd, the 2020 closing 14-day period deadline. Yet, voting by mail, that is, by absentee ballot, *begins* for *major political party* primary on June 26th through August 10th, the day before the primary election.[38] In short, the Secretary will print only the names of primary election candidates of major political parties, such as the Republican and Democratic parties, on the absentee ballot. There is *no provision* for absentee balloting for eligible (qualified) voters in the minor political party petitioning process.

While it may appear impractical to allow absentee balloting because of the 14-day filing window, previously argued as unconstitutional, it highlights the discriminatory effect of a minor political party candidate having no option, no alternative, and no second chance to correct any infirmities regarding the petition already filed or regarding any candidate unable to

---

[38] Kaardal Ex. F.

reach a required threshold number of signature-votes on his petition. Two classes of otherwise eligible voters are being treated differently.

The nominating process for the Libertarian Party candidate is confined practically to only those voters he can reach *in person;*[39] there is no electronic signatures for instance, and signatures must be in the original.[40] On the other hand, a major political party candidate has access to the entire electorate and an opportunity to commit voters on the primary date regardless if the voter can do so in person or not (by absentee ballot).

And with the Covid-19 health crisis, it crystalizes the discriminatory effect. In 2020, it will be next to impossible to attain the necessary number of signatures on a Libertarian Party candidate's petition because it must be done in person. With the guidelines currently in place to prevent the spread of Covid-19, few if any people will likely be signing a petition.

Notably, even if the Minnesota Legislature were to pass a law allowing for a different method to achieve the goal of a Libertarian Party candidate, such as electronic signatures because of the current health crisis, it would prove that an alternative process is available and can be done without any

---

[39] Holbrook ¶9.
[40] *E.g.* Holbrook ¶13. Holbrook. ¶¶24–28; McElvain ¶¶6–7; Dock Decl. ¶¶9–10; McCormick Decl. ¶6.

harmful effect to the primary election process.[41] Meanwhile, Minnesota law precludes absentee voting as a viable method to reach the entire electorate to attain signatures on Libertarian Party candidate petitions.

## VI. The inability to refute petition eligibility challenges by minor political party voters is discriminatory.

Before a person can vote in Minnesota, the person must first register to vote. Minn. Stat. § 201.054. 018, subd. 2. If a person is not registered to vote, he or she may not cast a ballot in any primary, special, or general election. *See,* Minn. Stat. § 201.018, subd. 2.

Registration is done through a voter registration application as outlined under Minnesota Statute § 201.054. When a registered voter's status is "challenged," there can be any number of reasons why the person's eligibility is being questioned. This would include, for instance, questions regarding the person's residency, a felony conviction (whether the felon is on parole or probation), citizenship, or under a guardianship court order. *See e.g.,* Minn. Stat. §§ 201.061, subd. 1a; 609.165, subd. 1. The questions are related to the requirements to be an eligible voter as found under Minnesota Statutes § 201.014.

---

[41] It is not clear as to its content, but a bill is being considered in the Legislature. Regardless, it does not moot any argument presented. *See* Fuehrer ¶25.

Minnesota Statutes § 204C.12 requires a challenged voter to answer additional questions under oath before an election judge at the polling place. When his or her eligibility to vote is in doubt, the election judge, will require answers before the person is allowed to vote. Once the questions are properly answered, the person will be allowed to vote. *Id.*

If a person votes by absentee ballot and is identified as a "challenged voter" the process is even less arduous. By Minnesota Rule 8210.0225, the registered absentee voter is treated differently, but is nonetheless *allowed to vote*:

> A voter registration application must be sent with the ballot to any challenged voter and to each voter whose voter registration application is incomplete under Minnesota Statutes, section 201.061, subdivision 1a, or 201.121, who applies for an absentee ballot. The absentee ballot process must be administered as if the voter was not registered to vote.

But, when a Libertarian Party candidate submits his or her petition to the Secretary, that office verifies each signatory on the minor political party's nominating petition. If it is found the voter who signed the petition is "challenged" the person is considered as an ineligible voter. Thus, the signature, as a vote, is not counted thereby jeopardizing the total number of threshold signatures (*i.e.,* votes) necessary for the minor political party candidate to be placed on the general election ballot for the office sought.

Unlike other voters participating in the major political party primary who may refute and overcome a challenge either at the polling place or through the absentee balloting process, a minor political party candidate signatory *has no process* to refute and overcome the challenge to have his signature-vote counted. *See* Minnesota Statutes § 204C.12 and Minnesota Rule 8210.0225.[42] Instead, the person's signature-vote is not counted toward the total needed to place a minor political party candidate on the general election ballot.

For a Libertarian Party petitioning candidate, a voter who is challenged cannot refute the challenge and in so doing, have his signature-vote count. And, an eligible voter, such as McCormick, has no way of knowing whether he is being challenged at the time of signing the petition and cannot later refute the challenge; his signature-vote is rejected and not counted.

The governing law, Minnesota Statutes § 204C.12, makes no exceptions for minor political candidate petitions. While otherwise qualified voters may vote in a primary election to have their favored candidate appear on a general election ballot after refuting a challenge to their eligibility, an otherwise qualified voter who signed a Libertarian Party petition *may not* have their signature-vote counted toward the threshold number.

---

[42] *2018 Election Guide* at 17 (Office of the Minnesota Secretary of State (circa 2018)), providing definitions for different challenges.

31

The application of Minnesota Statutes § 204C.12 to minority party candidate petition signatories is facially and as applied violative of the Fourteenth Amendment. The application of the statutory challenges against minor party petitioning candidates and their supporting voters, such as the Libertarian Party, is arbitrarily discriminatory. The Secretary's challenges and the lack of the ability of otherwise eligible petition voters to refute a challenge of eligibility is to permit voting by some classes of voters (of a majority political party) and denying the privilege to other classes of voters of otherwise qualified voters (of a minor political party) in similar circumstances, without affording them a comparable alternative means to have their vote (that is, their signature-vote) counted. *See Am. Party of Texas v. White*, 415 U.S. 767, 795 (1974). It is also a violation of their right to associate with the candidate of their choice, and party, under the First Amendment.

The First Amendment protects the right of individuals to associate for the advancement of political beliefs and the right of eligible voters, regardless of their political persuasion, to cast their votes effectively. *Elrod v. Burns,* 427 U.S. 347, 356–57 (1976). The lack of a process for one class of voters, the minor political party supporters to refute challenges, when voters of major political parties may do so either at the polling place *or* by absentee ballot, interferes with the associational rights of Libertarian Party supporters in the

petition process. Likewise, it interferes with the candidate's right to associate with an otherwise eligible voter. "[E]even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty." *Kusper v. Pontikes*, 414 U.S. 51, 58–59 (1973).

The failure to provide for an avenue for signatories to refute challenges does not serve a compelling state interest. Therefore, the Secretary violates those rights because § 204C.12 is unconstitutional.

## CONCLUSION

Where restrictions on access to the ballot are involved, states must adopt the least restrictive means to achieve their ends and the state's interests must be considered in light of the significant role third parties have played in the political history of this country. *See Illinois State Bd. of Elections v. Socialist* Workers *Party*, 440 U.S. 173, 184-86 (1979). Here, the Secretary cannot meet his burden of showing that the substantially burdensome ballot access provisions challenged by Plaintiffs are narrowly tailored to serve a compelling state interest. *See Moore v. Martin*, 854 F.3d 1021, 1026 (8th Cir. 2017). Further, the ballot access law at issue disadvantages one group over another so as to result in an unequal treatment which is not justified by a compelling interest. *Jaeger*, 659 F.3d at 702.

Accordingly, summary judgment on the Plaintiffs' claims should be granted

and prospective relief granted.

 Dated: April 7, 2020.

 /s/Erick G. Kaardal
Erick G. Kaardal, No. 229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis  Minnesota 55402
Telephone:  (612) 341-1074
Facsimile:  (612) 341-1076
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs*