## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Libertarian Party of Minnesota, Chris Holbrook, Mason McElvain, Chris Dock, and Brian McCormick, | Case No. 19-CV-2312 (DSD-DTS) |
| Plaintiffs, | |
| vs | **Plaintiffs' Memorandum of Law** |
| Steve Simon, in his official capacity as the Minnesota Secretary of State, or his successor, | |
| Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

RESPONSE ARGUMENT ...................................................................................... 1

I.    The underlying amended complaint meets the standards of law to negate a motion to dismiss under Rule 12(b)(6). ............................................. 1

II.   Subsequent voting in a major political party primary does violate the law and when a voter signs a minor political party petition, an eligible voter does give up the person's right to vote. ..................................................... 2

    A.   A signature on a minor political party petition is a "vote" to place the candidate on the general election ballot, similar to a major political party primary. ........................................................................... 4

    B.   The right to secrecy is violated when at the time of signing a minor political party petition, the signatory reveals his vote for the candidate to appear on the general election ballot. ..................................... 7

III.  There is no absentee ballot process for voters supporting minor political party candidates; thus, the amended complaint states a claim to support an alleged violation of the Equal Protection Clause. ........................... 9

IV.  If a person is not eligible to vote, the person may not sign a petition or have his signature-vote count toward the threshold number required for a candidate to appear on the general election ballot. ................................................. 13

Contrary to the Secretary's position, if an ineligible voter signs a Libertarian Party candidate's petition, the signature-vote does not count. ................................................................................................................. 13

V.  The claim that the 14-day petitioning period is unconstitutional is sufficiently pled for the relief requested. .......................................................... 18

VI.  Injunctive relief is the correct remedy. .............................................................. 24

VII.  The oath and petition threshold number requirements, to the extent challenged in the amended complaint, are abandoned as separate claims. ............................................................................................................... 24

CONCLUSION ................................................................................................................... 24

## INTRODUCTION

Contrary to the Secretary of State's position, the underlying Amended Complaint accurately reflects the primary election process in Minnesota. The Plaintiffs Libertarian Party of Minnesota, Chris Holbrook, Mason McElvain, Chris Dock, and Brian McCormick seek declaratory and prospective relief regarding certain Minnesota statutes, rules, and policies regarding primary elections which classify and treat differently major political parties and minor political parties. In the United States, eligible electors have a fundamental right to participate in elections with complete information. And, all who participate in the election process are to have an equal vote.

Yet, in Minnesota, the primary election process is fundamentally unfair, causing disparate treatment in favor of major political parties in violation of the U.S. Constitution's First and Fourteenth Amendments.

The Amended Complaint's allegations have been sufficiently pled to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The allegations and claims do state a claim for which declaratory relief can be granted. The Defendant Minnesota Secretary of State's motion to dismiss should be denied.

## RESPONSE ARGUMENT

**I.     The underlying amended complaint meets the standards of law to negate a motion to dismiss under Rule 12(b)(6).**

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden*

*v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stodghill v. Wellston Sch. Dist.,* 512 F.3d 472, 476 (8th Cir. 2008) *quoting Burton v. Richmond,* 276 F.3d 973, 975 (8th Cir.2002) (citation omitted). "When analyzing the adequacy of a complaint's allegations under Federal Rule of Civil Procedure 12(b)(6), we must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs." *Id.* (citation omitted).

The federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).  But, "they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (U.S. 2014)

As explained here, the amended complaint satisfies these standards associated with the Federal Rules of Civil Procedure to defeat the Secretary's motion to dismiss.

## II.     Subsequent voting in a major political party primary does violate the law and when a voter signs a minor political party petition, an eligible voter does give up the person's right to vote.

While primaries and general elections have a strong interconnection as "a single instrumentality for choice of officers," there is a difference between the effect of a primary and that of the general election. *Smith v. Allwright,* 321 U.S 649, 660 (1944). The Supreme Court has recognized, the right to vote in a primary election for the nomination of candidates without discrimination by the state is, like the right to vote in a general election, a right secured by the Constitution so that the same tests to determine the character of the

discrimination or abridgement should be applied to a primary election as are applied to a general election. *Id.* at 661–62*; Terry v. Adams,* 345 U.S. 461 (1953).

The First Amendment of the U.S. Constitution protects the right of association for both the voter and the candidate:

> Congress shall make no law … prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The Fourteenth Amendment, incorporates the First Amendment against the states, and guarantees due process and equal protection under the laws.

To determine whether a statute violates the Equal Protection Clause, the Court considers "the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). In analyzing equal protection challenges and the interests and burdens at issue, the Court must consider "whether the law disadvantages one group over another so as to result in unequal treatment and whether this unequal treatment is justified by a compelling interest." *Libertarian Party of N. Dakota v. Jaeger,* 659 F.3d 687, 702 (8th Cir. 2011). Although "reasonable election regulations may, in practice, favor the traditional two-party system," *Green Party of Arkansas v. Martin*, 649 F.3d 675, 684 (8th Cir. 2011) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997)), they may not serve the purpose of allowing the same two parties "to retain a permanent monopoly on the right to have people vote for or against them." *Williams*, 393 U.S. at 32. "Competition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms. New parties struggling for their place must have the time and

3

opportunity to organize in order to meet reasonable requirements for ballot position, just as the old parties have had in the past." *Id.*

Indeed, ballot access cases have emphasized that the states "have important interests in protecting the integrity of their political processes from frivolous or fraudulent candidacies, in ensuring that their election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections." *Clements v. Fashing*, 457 U.S. 957, 964–65 (1982) (citations omitted). Likewise, in recognizing these interests, the Supreme Court has upheld "reasonable level-of-support requirements and classifications that turn on the political party's success in prior elections." *Id.* at 965. However, the classifications created by law and applied to minor political parties, their candidates, and their voters, must be constitutionally analyzed for any detrimental effect on minor party candidates to gain access to the general election ballot. *See Libertarian Party v. Bond*, 764 F.2d 538, 541 (8th Cir. 1985) ("It has been recognized…that the entire election scheme must be analyzed to determine whether undue constraints on access to the ballot exist."). And in analyzing the entire primary election scheme, Minnesota does place undue constraints on the Libertarian Party, as a minority political party, and its candidates to gain access to the general election ballot.

### A. A signature on a minor political party petition is a "vote" to place the candidate on the general election ballot, similar to a major political party primary.

The Secretary's attack on the Equal Protection claims found in Count II, VII (absentee ballots and right of association), and VIII (refuting eligibility challenges) is

unpersuasive. On the nominating petition for a minor political party candidate, a signatory

takes an oath:

> "I solemnly swear (or affirm) that I know the contents and purpose of
> this petition, that I do not intend to vote at the primary election for the
> office for which this nominating petition is made, and that I signed this
> petition of my own free will."

Minn. Stat. § 204B.07, subd. 4. The oath, under Minnesota law, if not adhered to, has legal

consequences:

> "An individual who, in signing a nominating petition, makes a false
> oath is guilty of perjury."

Minn. Stat. § 204B.07, subd. 6. Perjury is a criminal offense. Minn. Stat. § 609.48, subd. 4 (up

to five years in prison or $10,000.00 in fines or both); Amend. Compl. *e.g.* ¶¶7 9; 120–121;

133; 264; 287.

In a revealing statement, arguing the signature on a minor political party petition is

not the functional equivalent of a vote, the Secretary states that Minnesota law does not

"bar[ ] an individual from both signing a nominating petition and voting in a primary

election for the same office." Sec. Memo. to Dismiss. 13–14. Neither does a criminal law bar

someone from robbing a bank, but if a person does so and gets caught, there will be legal

consequences. Similarly, by signing the minor political party petition, the signatory is

intentionally giving up the right to vote in a future major political party primary election. The

Secretary does not dispute this point—and eligible voters recognize it. Amend. Compl. *e.g.*

¶¶239–241.

The Secretary suggests that the signing of a minor political party petition to

"demonstrate a certain minimum level of support of the electorate before being placed on

the general election ballot" is different than a primary election in which the candidate receiving a greater number of votes than another candidate "demonstrate[ ]s a certain...level of support of the electorate before being placed on the general election ballot. "Sec. Memo. to Dismiss. 13. In both cases, the candidate will not appear on the general election ballot without a sufficient support of the electorate. In the Libertarian Party's context, there is a required threshold number; where for the major political parties, there is a simple plurality. But, the numbers are not the issue here.

What the Secretary fails to appreciate, as demonstrated in the amended complaint's allegations, is that the actions of electors supporting minor political party candidates are treated differently than actions of major political party electors. But, there is a common thread.

The actions of a voter result in associating that voter with a candidate for the purpose of having that candidate appear on the general election ballot. Whether the voter succeeds or not is not relevant. The eligible voter supporting a minor political party candidate and the eligible voter supporting a major political party candidate has one thing in common—each has one vote. And when an eligible voter signs a minor political party petition, the person has *exhausted* the right to vote in the primary election; casting a vote in a major political party primary is not available for the voter who signs a minor political party petition. Similarly, when an eligible voter casts a vote in a Democratic primary, the person cannot walk across the aisle and cast a vote in the Republican primary or vice versa—the person casting his vote has exhausted the one vote he had.

Here, the Secretary does not dispute the effect of signing a petition. If an eligible person by signing a petition cannot vote in a primary election, than what was given up by signing a petition months before the primary? The right to vote. The electorate are not dissimilarly situated persons—each are eligible to vote and have a fundamental right to vote. But, it is here where the similarly situated voters are treated differently and the Equal Protection Clause problems arise.

### B. The right to secrecy is violated when at the time of signing a minor political party petition, the signatory reveals his vote for the candidate to appear on the general election ballot.

The Secretary does not dispute that a Libertarian Party candidate's petition is subject to the Minnesota Government Data Practices Act under chapter 13. Amend. Compl. ¶246. The Secretary does not dispute the Secretary can use his authority to make those disclosures. In so doing, the identities of the eligible voters for the candidate is revealed. The U.S. Supreme Court has recognized that the secret ballot is of paramount importance to our system of voting.

In *Burson v. Freeman,* 504 U.S. 191, 206 (1992), for example, the Court found a "widespread and time-tested consensus" that the secret ballot is necessary to prevent voter intimidation and election fraud. Three terms later, the Court used the tradition of the secret ballot, which it described as "the hard-won right to vote one's conscience without fear of retaliation," in recognizing a First Amendment interest in anonymous political advocacy. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 343 (1995). And while our U.S. Court of Appeals for the Eighth Circuit has not decided whether there is a constitutional right to a

secret ballot, there is nevertheless a strong and established privacy interest in a secret ballot. *See Campaign for Fam. Farms v. Glickman,* 200 F.3d 1180, 1188 (8th Cir. 2000).

While it is true signing a nominating petition is not per se a "ballot,"[1] what occurs with the Libertarian Party nominating petition is a public declaration of a voter's support for a specific candidate. *See* Amend. Compl. ¶ 246. That same public declaration does *not* occur in a major political party primary election. *Id.* ¶ 249–250. The Equal Protection Clause difficulties are revealed as it affects the voter and the right of association and results in a chilling effect on those rights:

> It is only those electors wishing to sign a petition who must declare their desire to vote for a specific individual. Electors who support other candidates have to make no such public declaration. The chilling effect that such a practice has on associational and voting rights is obvious. The voting citizen must decide whether to sign the petition, having his political preference clearly and unmistakably disclosed, or to refrain from signing. A potential subscriber, who is uncertain about whom he will support in the general election, but with an interest in the candidate will be unable to sign a petition because of the requisite declaration. The impact to the candidate is equally drastic. He is unable to espouse his views because the declaration greatly curtails his ability to appear on the ballot and become widely known. The possibility of having new candidates with unusual and creative political philosophies is greatly reduced. As a result, this requirement fosters a system which favors the status quo, while discouraging independent candidates and new political parties.

Socialist *Workers Party v. Hechler*, 890 F.2d 1303, 1310 (4th Cir. 1989), *quoting Anderson v. Mills*, 664 F.2d 600, 608 (6th Cir. 1981).

The Amended Complaint alleges the very concerns reflected by the Fourth Circuit. The Plaintiffs McCormick, Dock, McElvain, and Holbrook recognize that their declarations

---

[1] Minnesota's election laws only protect ballot secrecy within the polling place as it pertains to actions of voters. *See e.g.,* Minn. Stat. § 204C.17.

of support for a particular petitioning candidate subject them to public disclosure although they have never waived their right to secrecy.   In turn, the Plaintiff and the public have fear of retaliation for signing the minor political party petitions because the major political party candidates will take such public acts as actions against them. Amend. Compl. ¶¶247–252. The public's fear of retaliation does not exist when the ballot is secret.

Further, the public must provide their signature vote on the minor political party petition, without knowing the entire candidate field, months before the primary election date. Amend. Comp. ¶86; 106 (Petitions due on June 2, 2020; primary elections on August 11, 2020).

The Amended Complaint provides sufficient factual support to support the Equal Protection and First Amendment claims asserted in Count II. The Secretary's motion to dismiss regarding Count II should be denied.

## III.   There is no absentee ballot process for voters supporting minor political party candidates; thus, the amended complaint states a claim to support an alleged violation of the Equal Protection Clause.

Absentee voting is not a right. The opportunity of an absentee voter to cast his vote in a public election by mail has the characteristics of a privilege rather than of a right. Since the privilege of absentee voting is granted by the legislature, the legislature may mandate the conditions and procedures for such voting." *Bell v. Gannaway,* 227 N.W.2d 797, 802 (Minn. 1975) (citations omitted); *KSTP-TV v. Ramsey County,* 806 N.W.2d 785, 790 (Minn. 2011) ("Voting in absentia is a privilege…."). In *Bell v. Gannaway,* the Minnesota Supreme Court explained that "voting by absentee ballot is a privilege, not a right, and affirmed the mandatory nature of absentee voting requirements." *Gannaway,* 227 N.W.2d at 802-03. The

Court reiterated that because "'the privilege of absentee voting is granted by the legislature, the legislature may mandate the conditions and procedures for such voting.'" *Id.*, 227 N.W.2d at 802, *quoting In re Contest of Gen. Election Held on November 4, 2008, for Purpose of Electing a U.S. Sen. from State of Minnesota,* 767 N.W.2d 453, 462 (Minn. 2009).

Under Minnesota election law, an otherwise eligible voter may vote by an absentee ballot in either a primary or general election. Minn. Stat. § 203B.04. However, in a primary election, while absentee balloting is allowed for voters who support major political party candidates, it is not available for voters who support minor political party candidates.

The Secretary does not dispute that the governing Minnesota Statutes for absentee ballot voting, §§ 203B.04 to .27, and governing Minnesota Rules, chapter 82010, do not authorize absentee participation in the minor political party candidate nominating petition process. Amend. Compl. ¶¶64–66; 376–378. The Secretary does not dispute that his policies and guidelines do not authorize absentee participation in the minor political party candidate nominating petition process. Amend. Compl. ¶¶67; 379. Instead, the Secretary suggests an alternative absentee process is available and ignores the 14-day window period from May 19, 2020 to June 2, 2020 to accomplish the process. Amend. Compl ¶382. The Secretary further suggests his "alternative" is less burdensome than that the absentee ballot process itself. Sec. Memo. to Dismiss 15–16.

Since the Secretary refers to his website, we note the election calendar's absence of any reference to the minor political party nominating petition period.[2] Absentee balloting for

---

[2] "Elections Calendar" https://www.sos.state.mn.us/election-administration-cam-paigns/elections-calendar/ (last visited Apr. 28, 2020).

the August 11, 2020 major political party primary begins on June 26, 2020 through August 10th. *Id.* Notably, the Secretary has provided a simple on-line process for eligible voters to obtain an absentee ballot.[3]

In contrast, for the voter to sign a minor political party petition, the Secretary states that downloading a "sample form," which by law, requires 8 ½ inch by 14 inch paper,[4] is a lesser burden. The Secretary fails to identify *where* this "absentee process" is noted on his website for minor political party voters to locate. He cannot because there is none. Further, the Secretary fails to identify where on his website he identifies the time period for when absentee voting begins and ends for the minor political party supporters to download, print, sign and submit the form.

Even if downloaded, printed and signed, where does the Secretary provide the location for which the document is to be sent? He doesn't. Moreover, even the "sample form" does not state where the executed petition is to be sent (and by what deadline). Amend. Compl. Ex. B. Contrary to an absentee ballot for a primary election, in which the voter is given instructions, the voter supporting a minor political party candidate is given *none*. Amend. Compl. Ex. D at 22–23. Materials sent to an absentee ballot voter include:

- Instructions;
- Secrecy envelope;
- Signature envelope; and
- Addressed and postage paid return envelope (if ballot is returned by mail).

*Id.* at 23.

---

[3] "Request an Absentee Ballot" https://mnvotes.sos.state.mn.us/ABRegistration/ABRegistrationStep1.aspx (last visited Apr. 28, 2020).
[4] Minn. R. 8205.1010.

11

The Secretary's argument that a minor political party supporter has a lesser burden contradicts reality pled in the amended complaint and shown by the exhibits. Sec. Memo. to Dismiss at 16; Amend. Compl. The "alternative" methodology proposed by the Secretary is hardly a comparative, alternative means to vote:

> [P]ermitting absentee voting by some classes of voters and denying the privilege to other classes of otherwise qualified voters in similar circumstances, without affording a comparable alternative means to vote is an arbitrary discrimination violative of the Equal Protection Clause.

*Am. Party of Texas v. White,* 415 U.S. 767, 795 (1974).

Here, there is nothing to suggest that voters seeking to support minor political party candidates or major political party candidates are not eligible voters under Minnesota law. Minn. Stat., §§201.014, subd. 1 and 201.018; Amend. Compl. ¶¶15; 24; 33; 44; 71; 72. Therefore, all eligible voters should have the same privilege to vote by absentee ballot. However, because minor political party voters are denied the privilege that major political party voters have,  Fourteenth Amendment equal protection rights and First Amendment associational rights are violated. Amend. Compl. ¶¶373; 375; 387–388.

The Amended Complaint provides sufficient factual support to challenge the Equal Protection and First Amendment allegations asserted under Count VII. Hence, the Secretary's request to dismiss Count VII should be denied.

**IV.    If a person is not eligible to vote, the person may not sign a petition or have his signature-vote count toward the threshold number required for a candidate to appear on the general election ballot.**

**Contrary to the Secretary's position, if an ineligible voter signs a Libertarian Party candidate's petition, the signature-vote does not count.**

The Secretary's argument opposing Count VIII regarding the nominating petition process for minor political party candidates misses the constitutional infirmities alleged under the Fourteenth Amendment's Equal Protection Clause and the First Amendment right of association. The Secretary asserts that "[n]either registration or a challenge to registration has any effect on a petition signer's eligibility." Sec. Memo. to Dismiss at 17. However, the eligibility of a voter can have a profound effect on the outcome of whether a candidate has met the threshold number of signature-votes to appear on the general election ballot.

In Minnesota, minor political candidates must meet a certain threshold number of signature-votes to appear on a general election ballot, depending on the type of elective office sought. Minn. Stat. § 204B.08, subds. 3(a), (b), and (c); Amend. Compl. *e.g.* ¶¶ 87–91. The eligibility of a voter becomes critical because if the Secretary finds that a signatory is *ineligible* to vote, the signature must not be counted toward the threshold number:

> "Signatures from persons determined by the secretary of state to be ineligible to vote must not be counted."

Minn. Rule 8205.3200, subp. 1D(3).

Before a person can vote in Minnesota, the person must first register to vote. Minn. Stat. § 201.054. 018, subd. 2. If a person is not registered to vote, he or she may not cast a ballot in any primary, special, or general election. *See,* Minn. Stat. § 201.018, subd. 2.

13

Registration is done through a voter registration application as outlined under Minnesota Statute § 201.054. When a registered voter's status is "challenged" the person's eligibility is being questioned. There can be any number of reasons why the person's eligibility is being questioned. This could include, for instance, questions regarding the person's residency, a felony conviction (whether the felon is on parole or probation), citizenship, or under a guardianship court order. *See e.g.,* Minn. Stat. §§ 201.061, subd. 1a; 609.165, subd. 1. The questions are related to the requirements to be an eligible voter as found under Minnesota Statutes § 201.014.

If a person cannot overcome the eligibility challenge, the person cannot cast a ballot. Likewise, if a person's eligibility is challenged during the Secretary's verification process regarding a minor political party candidate's petition, and the challenge cannot be overcome, the voter remains ineligible and the signature-vote "must not be counted." How the Secretary suggests that this could not happen in Minnesota or otherwise affect the petitioning process for a minor political party's candidate is concerning. Sec. Memo. to Dismiss at 17.

Minnesota Statutes § 204C.12 requires a challenged voter to answer additional questions under oath before an election judge at the polling place. When his or her eligibility to vote is in doubt, the election judge, will require answers before the person is allowed to vote. Once the questions are properly answered, the person will be allowed to vote. *Id.* If the challenged person " who refuses to answer questions or sign a polling place roster or voter signature certificate as required by this section must not be allowed to vote." *Id.,* subd. 4.

14

By contrast, if a person votes by absentee ballot and is identified as a "challenged voter" the process is even less arduous. By Minnesota Rule 8210.0225, the registered absentee voter is treated differently, but is nonetheless *allowed to vote*:

> A voter registration application must be sent with the ballot to any challenged voter and to each voter whose voter registration application is incomplete under Minnesota Statutes, section 201.061, subdivision 1a, or 201.121, who applies for an absentee ballot. The absentee ballot process must be administered as if the voter was not registered to vote.

But, when a Libertarian Party candidate submits his or her petition to the Secretary, that office verifies signatory-votes on the minor political party's nominating petition. If it is found the voter who signed the petition is "challenged" the person is considered as an ineligible voter. Thus, the signature, as a vote, is not counted thereby jeopardizing the total number of threshold signatures (*i.e.,* votes) necessary for the minor political party candidate to be placed on the general election ballot for the office sought.

Unlike other voters participating in the major political party primary who may refute and overcome a challenge either at the polling place or through the absentee balloting process, a minor political party candidate signatory *has no process* to refute and overcome the challenge to have his signature-vote counted. *See* Minnesota Statutes § 204C.12 and Minnesota Rule 8210.0225. Instead, the person's signature-vote is not counted toward the total needed to place a minor political party candidate on the general election ballot.

Voters, who are on otherwise on equal footing, become differing classes only because of their association with differing political parties.  Unlike major political party challenged voters, minor political party challenged voters do not have a comparable alternative means to

overcome a challenge to be considered an eligible voter and have his or her signature-vote counted toward a petition threshold number.

For a Libertarian Party petitioning candidate counting petition signatures, a voter who signs the petition who is challenged has no process to overcome the challenge—so his signature-vote will not count toward the petition threshold number. And, an eligible voter, such as McCormick, has no way of knowing whether he is being challenged at the time of signing the petition.  Nor can McCormick later overcome the challenge.  Despite McCormick's signature-vote on the minor political party petition, it is rejected without a process for McCormick to overcome the challenge.

The governing law, Minnesota Statutes § 204C.12, makes no exceptions for minor political candidate petitions. While otherwise qualified voters may vote in a primary election to have their favored candidate appear on a general election ballot after refuting a challenge to their eligibility, an otherwise qualified voter who signed a Libertarian Party petition *may not* have their signature-vote counted toward the petition threshold number.

The Secretary asserts that the Plaintiffs lack standing to make the claim asserted here, having alleged "no facts suggesting that there is any actual risk that a petition signer will have his or her signature invalidated…" Sec. Memo. to Dismiss at 17. To the contrary, the Amended Complaint does reflect facts to support standing to invoke federal jurisdiction on the federal questions before this Court. *281 Care Comm. v. Arneson,* 638 F.3d 621, 627 (8th Cir. 2011).

First, there is a minor political party nominating petition period beginning in 2020 on May 19 and continuing for 14 days to June 2. Amend. Compl.. *e.g.,* ¶¶ 86, 106. Second,

McCormick, Dock, McElvain, and Holbrook will be signing petitions in Minnesota for Libertarian Party candidates. *Id.,* ¶ 408. Moreover, they are potential candidates. *Id.,* ¶¶ 21; 30; 41; 51. The harm is imminent. *281 Care Comm.*, 638 F.3d at 627 Although they will not know and cannot know if they are challenged, they recognize that they have no process to overcome the challenge; in turn, for a candidate, the loss of any number of signature-votes could result in the failure to meet the threshold number of signature-votes required to move onto the general election ballot. Amend. Compl. ¶¶ 408–411.

The Secretary's application of the statutory challenges against minor political party candidates and their supporting voters who sign the nominating petitions, without a process to overcome the challenges, is arbitrarily discriminatory. The Secretary's challenges and the lack of a process for the otherwise eligible petition voters to overcome a challenge of eligibility is to permit voting by a class of voters—a majority political party voters-- and deny the same privilege to another class of voters—minor political party voters—in similar circumstances, without affording them a comparable alternative means to have their vote (that is, their signature-vote) counted. *See Am. Party of Texas v. White*, 415 U.S. 767, 795 (1974). It is also a violation of their First Amendment right to associate with the candidate and party of their choice.

Because minor political party signatory petition voters are denied the statutory right to overcome a challenge questioning their eligibility, whereas all other voters have that right, their Fourteenth Amendment equal protection rights and First Amendment associational rights are violated. Amend. Compl. ¶¶373; 375; 387–388.

The Amended Complaint provides sufficient factual support to support the Equal Protection and First Amendment claims asserted under Count VIII. Hence, the Secretary's request to dismiss Count VIII should be denied.

## V.   The claim that the 14-day petitioning period is unconstitutional is sufficiently pled for the relief requested.

The Secretary fails to address the crux of Count VI regarding the alleged unconstitutionality of the 14-day period to seek the required threshold number of signatures on a Libertarian Party candidate's petition, depending on the office sought. Sec. Memo. to Dismiss 18–23. The issue is not when the petitioning process begins, but when it starts and ends.  In this case, there is 14 days from start to finish. The Secretary has failed to present any argument to support the state's compelling interest in limiting the period to 14 days. The Secretary does not provide argument that the 14-day period does not burden the Plaintiffs' First Amendment right to petition. The Secretary's assertions of what a candidate can or cannot do within 14 days to obtain a certain number of signature votes is questionable rationale at best. Some may make it; others may not.

But, the Plaintiffs are not here, arguing about lowering threshold numbers. The Secretary's cases cited are not on point: *Moore v. Thurston,* 928 F.3d. 753 (8th Cir. 2019) (moving of petitioning start date from March to May; matter moot); *McLain v. Meier,* 851 F.2d 1045 (8th Cir. 1988) (movement of a earlier filing deadline; total time period to collect signatures not at issue); *Jenness v. Fortson,* 403 U.S. 431 (1971) and *Langguth v. McCuen,* No. 93-3413, 1994 Wl411736 (8th Cir. Aug. 9, 1994) (signature requirements). Sec. Memo. to Dismiss at 20.

However, *Am. Party of Texas v. White,* 415 U.S. 767 (1974) does provide an illustration of the issues now before this Court. In challenging Texas election laws related to nominating petitions, the U.S. Supreme Court did not find 55 days as an "unduly short time for circulating supplemental petitions." *Am. Party of Texas,* 415 U.S. at 786. Indeed, as part of the Texas election scheme *two* opportunities are provided for "minor" political parties to meet a 1% threshold requirement of the total gubernatorial vote in the preceding general election. *Id.* at 774. The first opportunity was at precinct level conventions. If the party failed to achieve that threshold, then a second opportunity involved circulating petitions during a 55 day period circulated after the primary. *Id.* By contrast, in Minnesota, not only is the 14-day period overly burdensome, there is no second chance and no supplemental process after the primary. The Secretary does not address this particular issue noted by the Supreme Court in *American Party of Texas.*

Again, in Minnesota, there is no supplemental or subsequent petitioning process if a threshold number is not achieved. Only if before the end of the 14 period the Secretary identifies that the petitioning candidate number does not reach the threshold number does the candidate have a chance to obtain additional signature-votes. Even then,  the additional signatures must be achieved before the end of the 14-day period, here, on June 2, 2020. Minn. R. 8205.3200, subp.1D(7).

Minnesota Statutes § 204B.09, subdivision 1(a) governs the time period for federal, state and county candidate nominating petition filings:

> [N]ominating petitions for county, state, and federal offices filled
> at the state general election shall be filed not more than 84 days
> nor less than 70 days before the state primary.

In Minnesota for 2020, candidates for federal or state offices, must file with the Office of the Minnesota Secretary of State between May 19, 2020 and June 2, 2020. The period between May 19 and June 2 is 14 days. *Id.* The 14-day period also includes the Memorial Day weekend. The 14-day period remains the same length for future elections except that the actual calendar date may be different than those stated for 2020. Amend. Compl.¶209. Notably, by law, a minor political party candidate cannot start obtaining petition signatures until the first date of filing.  The first day of filing for the upcoming election is May 9, 2020.

The Libertarian Party candidates seeking signatures for their respective nominating petitions do not have access to the same pool of electorates during the May and early June 14 day-period as the major political party primary candidates have access to through August primary day. *Id.* ¶ 210. The electorate is different in May than the electorate is 65 days later in August—*e.g.,* people move into the district, become eligible to vote or turn 18 years of age. *Id.* ¶ 213.

As previously stated, there is no subsequent or supplemental process or second chance for Libertarian Party candidates to obtain additional petition signatures after the June filing deadline for filing of political party candidate nominating petitions. If they do not reach the minimum amount of signatures, the candidate cannot file. If a submitted petition falls short of the minimum required signature amount because voters are later found ineligible to be counted, the candidate is not placed on the general election ballot. Minn. R. 8205.3200, subp. 1D(6).

The end of the "primary" date for obtaining the number of signatures on a Libertarian Party's candidate's petition is not the same as that of a major political party primary. The fact the petition deadline is months before the primary violates the Equal Protection Clause. The dates in which *all* persons seeking elected office must file their respective affidavit of candidacy is within the 14-day period (for any election year); but, in 2020, it is between May 19 and June 2. However, the circulating of a minor political party's petition to acquire the necessary signature-votes is 14 days, due no later than June 2nd, as opposed to a major political party's deadline from June 2nd (at the latest) to August 11th, the date of the 2020 state primary election date—70 days later—tto acquire the necessary votes to have their name appear on the general election ballot where the person has a challenger. If there is no challenger for a major political party candidate, there is no primary and the candidate proceeds to the general election ballot.

Further, there are no "write-in" votes for minor political party candidates on the August primary ballot since the primary is exclusively that of a major political parties. *Compare, Jenness v. Fortson,* 403 U.S. 431, 433–34 (1971) (Total time allowed for circulating a nominating petition is 180 days for a minor political party candidate and is filed on the same deadline that a candidate filing in a party primary must meet (and allows for write-in votes) thus, is not violative of equal protection clause.)

While some minor political candidates have me the burden of obtaining the necessary number of petition signatures within the 14-day period, and while others have failed, it does not change the constitutional analysis. We cannot discern nor has the Secretary provided any reasonable rationale for the state to restrict Libertarian Party candidates to this 14-day

window to acquire from anywhere between 500 signature-votes for state legislative office to 2,000 signature-votes for state Governor.  There is no reason that the minor political party candidates should not be able to collect signatures up to primary election day in August.

This lack of any reasonable rationale is particularly highlighted in the 2020 presidential primary contest. While major political parties had a presidential primary on March 3, 2020, state law allows minor political parties presidential candidates to obtain 2,000 signature-votes on their petition from May 19th (the first date in which signatures can be collected) to August 18, 2020, 77 days before the general election. Minn. Stat. § 204B.09, subd. 1(c). This amounts to a 92-day time frame.

Since that is true, there is no cognizable harm to major political party candidates by extending the date of minor political party petition threshold signature deadline to the election date of the state primary. This would move the deadline from June to August.[5]

While we do not object to either the requirement to file an *affidavit of candidacy* as must all other candidates, or the actual number of signature-votes required on the petition itself, the constitutional challenge here, is the arbitrary discriminatory months-before-the-primary, 14-day time frame, to obtain the necessary signatures. The candidates have chosen to associate with a minor political party.  The constraints imposed on the candidates *because* of their association with a minor political party are unconstitutionally burdensome. Similarly, eligible voters who associate with the minor political party candidates find themselves unconstitutionally burdened *because they chose to associate* with the minor political party candidates. Amend. Compl. ¶¶15; 24; 33; 44.

---

[5] Filing an affidavit of candidacy could remain the same—in 2020, June 2nd.

If the state is sincerely concerned about eliminating frivolous minor political party candidates from the ballot, then the time frame inconsistencies between state and federal elected offices—14 days-- and the presidential nominating process—92 days—is unexplainable. *Cf. Am. Party of Tex.,* 415 U.S. at 782 (A state's interest in eliminating frivolous candidates from the ballot is "sufficiently implicated to insist that political parties appearing on the general ballot demonstrate a significant, measurable quantum of community support."). Even if the Secretary suggests that the cut-off is necessary to allow for confirming the eligibility of the signatories, the June 2nd filing deadline remains 70 days before the August state major political party primary election, 108 days before absentee ballots are prepared for distribution in September, and 153 days before the November general election.

The status quo of the two-party system is unconstitutionally preserved in light of the fact that a Libertarian Party petitioning candidate has no other option, alternative, or second chance to supplement his petition after the 14-day filing deadline in late May or early June. The existing law establishing the 14-day filing deadline, Minnesota Statutes § 204B.09, subdivision 1(a) effectively bars all Libertarian Party candidates from the general election ballot. As diligent as those candidates are in gathering signatures, it remains unreasonable for them to achieve the necessary required petition signatures in such a short time-frame that far out before the election. *Libertarian Party,* 710 F.2d at 793; *Storer v. Brown,* 415 U.S. 724, 742 (1974). The months-before-the-election, 14-day window violates the First and Fourteenth Amendments.

The Amended Complaint provides sufficient factual support for the Equal Protection and First Amendment claims asserted under Count VI. Hence, the Secretary's request to dismiss Count VI should be denied.

**VI.     Injunctive relief is the correct remedy.**

The Plaintiffs agree that monetary relief is barred by the Eleventh Amendment.

**VII.    The oath and petition threshold number requirements, to the extent challenged in the amended complaint, are abandoned as separate claims.**

Upon consideration of the constitutional arguments regarding the minor political party petition oath and threshold number requirements, to the extent separately challenged in the amended complaint, the oath and the petition threshold number requirements are abandoned as separate claims.

## CONCLUSION

The asserted allegations in the underlying Amended Complaint have been sufficiently pled to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The allegations and claims do state a claim for which prospective relief can be granted. The Defendant Secretary of State's motion to dismiss should be denied.


Dated: April 28, 2020.                     /s/Erick G. Kaardal
                                         Erick G. Kaardal, Attorney No. 229647
                                         Mohrman, Kaardal & Erickson, P.A.
                                         150 South Fifth Street, Suite 3100
                                         Minneapolis  Minnesota 55402
                                         Telephone:  (612) 341-1074
                                         Facsimile:  (612) 341-1076
                                         Email: kaardal@mklaw.com
                                         *Attorneys for Plaintiffs*