UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 19-2312 (DSD/DTS)

Libertarian Party of Minnesota,
Chris Holbrook, Mason McElvain,
Chris Dock and Brian McCormick,

       Plaintiffs,

v.                                                                 **ORDER**

Steve Simon, in his official
capacity as the Minnesota
Secretary of State, or his
successor,

       Defendant.

       Erick G. Kaardal, Esq. and Mohrman, Kaardal & Erickson, P.A., 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402, counsel for plaintiffs.

       Nathan J. Hartshorn, Esq. and Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101, counsel for defendant.

This matter is before the court upon the motion to dismiss by defendant Steve Simon, in his official capacity as the Minnesota Secretary of State (Secretary) and the motion for summary judgment by plaintiffs Libertarian Party of Minnesota, Chris Holbrook, Mason McElvain, Chris Dock, and Brian McCormick. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion to dismiss is granted and the motion for summary judgment is denied as moot.

BACKGROUND

This dispute involves constitutional challenges to certain Minnesota statutes, rules, and policies relating to the primary election process. Plaintiffs include the Libertarian Party and four individuals who are leaders or members of the Libertarian Party and eligible Minnesota electors. See Am. Compl. ¶¶ 15, 24, 33, 44. Plaintiffs Holbrook and McElvain are the present Chair and Vice Chair, respectively, of the Libertarian Party. Id. ¶¶ 15, 24. Plaintiffs Dock and McCormick have been Libertarian Party candidates for Minnesota offices in past election cycles. Id. ¶¶ 35, 46. All of the individual plaintiffs are "potential future viable Libertarian candidate[s] for elected public office." Id. ¶¶ 21, 30, 41, 51. Relevant here, the Secretary oversees statewide elections and administers nominating petitions. See id. ¶¶ 54–56.

Under Minnesota law, the Libertarian Party is considered a "minor political party." Id. ¶ 10; Minn. Stat. § 200.02, subdiv. 23. Plaintiffs contend that certain laws unfairly limit their ability as a minor party to participate in the general election process as compared to their "major political party" counterparts.

Minor party candidates who wish to appear on the general election ballot must complete a nominating petition and submit it to the state's election officials. Minn. Stat. § 204B.03.

2

Depending on the office sought, the candidate must secure a certain number of signatures on the nominating petition in order to be added to the election ballot. Minn. Stat. § 204B.08, subdiv. 3. Specifically, a candidate must have at least 500 signatures to run for state legislative office; 1,000 signatures for congressional office; and 2,000 signatures for federal or state office voted on statewide.[1]  Id.

The nominating petition includes the following signer's oath:

> I solemnly swear (or affirm) that I know the contents and purpose of this petition, that I do not intend to vote at the primary election for the office for which this nominating petition is made, and that I signed this petition of my own free will.

Minn. Stat. § 204B.07, subdiv. 4. The signer must provide his or her signature, birthdate, and address on the petition. Id. The petition does not require notarization or certification. Id. A nominating petition may be signed by "individuals who are eligible

---

[1] The number of required signatures needed can also be based on a percentage of the "total number of individuals voting" in the corresponding preceding election, if that number is less than the number identified in the statute. See, e.g., Minn. Stat. § 204B.08, subdiv. 3(a) ("The number of signatures required on a nominating petition shall be ... for a federal or state office voted on statewide, one percent of the total number of individuals voting in the state at the last preceding state general election, or 2,000, whichever is less[.]"). The parties agree that the numbers set forth in the statute, rather than the percentages, govern in this case. See Am. Compl. ¶¶ 87-91; Def.'s Supp. Mem., ECF No. 13, at 3 n.1.

3

to vote" but they are not required to be registered to vote. Minn. Stat. § 204B.08, subdiv. 2; see also Minn. Stat. § 201.014, subdiv. 1 (providing that to be eligible to vote, a person must be at least eighteen years old, be a United States citizen, and have maintained a Minnesota residence for twenty days immediately preceding the election). The statute provides that "[a]n individual who, in signing a nominating petition, makes a false oath is guilty of perjury." Minn. Stat. § 204B.07, subdiv. 6. The perjury caution is not included on the petition itself. See https://www.sos.state.mn.us/media/1891/nominating-petition-for-partisan-office.pdf., last visited May 28, 2020.

Any individual wishing to sign a nominating petition may do so in person or may download a petition form from the Secretary's website, sign it, and then send it to the candidate. See https//www.sos.state.mn.us/election-administration-campaigns/become-a-candidate/candidate-petitions/, last visited May 28, 2020. Nominating petitions are subject to public inspection through the Secretary's office. Am. Compl. ¶ 140.

Minor party candidates have fourteen days in which to collect the required number of signatures on their nominating petitions in order to appear on the general election ballot. See Minn. Stat. § 204B.09, subdiv. 1 ("[A]ffidavits of candidacy and nominating petitions for county, state, and federal offices filled at the

4

state general election shall be filed not more than 84 days nor less than 70 days before the state primary."). This year, the signature collection period runs from May 19 to June 2.

Once the signatures are collected, the candidate must file the nominating petition with the Secretary "at least 77 days before the general election day" – this year the deadline is August 18, 2020. Minn. Stat. § 204B.09, subdiv. 1(c); Am. Compl. ¶ 103. According to plaintiffs, the Secretary verifies each signature on the nominating petition to ensure that the signer is an eligible voter. Am. Compl. ¶ 113. If the Secretary determines that a signer is not an eligible voter, that signer is deemed a "challenged" voter and his or her signature will not be counted. Id. ¶¶ 113-14. Plaintiffs allege that the signer has no ability to overcome the challenge, unlike major party primary voters who may refute a challenge to their voter registration at the polling place. Id. ¶ 115.

Plaintiffs commenced this action on August 21, 2019, and amended their complaint on December 18, 2019. In their 85-page amended complaint they broadly allege that the above laws and related rules and policies violate various aspects of the Equal Protection Clause, the Due Process Clause, and the First Amendment, by constraining their ability to secure placement on the general election ballot. See generally id. Plaintiffs seek declaratory

5

and injunctive relief as well as attorney's fees and costs.[2]  The Secretary now moves to dismiss, and plaintiffs move for summary judgment.  The court will turn first to the motion to dismiss, which was filed before the motion for summary judgment.

**DISCUSSION**

**I.   Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause

---

[2] Although plaintiffs now demand an expedited ruling, they did not move for a temporary restraining order or a preliminary injunction.

of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6).  Fed. R. Civ. P. 12(d).  The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings."  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).

### A. Nominating Petition Oath

As far as the court can discern, all of the counts in the amended complaint include challenges to the constitutionality of the nominating petition oath.[3]  Plaintiffs allege that anyone who signs a nominating petition "must swear, under penalty of felony perjury prosecution, that they will not vote in [the] upcoming primary election."  Am. Compl. ¶ 80.  They contend that this requirement violates the Constitution in multiple respects.  The Secretary argues that plaintiffs have misstated and misconstrued the oath requirement.

As an initial matter, the court notes that plaintiffs appear

---

[3] Each count in the amended complaint broadly alleges various constitutional violations relating to more than one law and associated rule or policy.  Given this structure, the court will analyze each law at issue rather than conducting a count-by-count assessment of the complaint, as would be typical.

7

to concede that their challenge to the oath is untenable. Plaintiffs' opposition memorandum states that they are abandoning "as separate claims" any challenge to the oath. Pls.' Opp'n Mem., ECF No. 25, at 24. Because the amended complaint makes no separate claim regarding this requirement, the court assumes that plaintiffs are in fact abandoning their challenge to the oath requirement.

Even if not conceded, plaintiffs' challenge to the oath fails as a matter of law because it is based on a misreading of the law. The oath simply requires nominating petition signers to attest that they do not "intend" to vote in the primary election for the office underlying the petition. Minn. Stat. § 204B.07, subdiv. 4. In other words, the oath only requires signers to attest to a present intention not to vote in an upcoming primary. Because the oath is expressly limited to the intent at the time of signature, it does not preclude signers from changing their minds thereafter and from voting in a later primary. The petition therefore does not require signers to relinquish any right nor does it subject them to criminal prosecution if they vote in a subsequent primary. Under these circumstances, the premise of plaintiffs' oath-related claims is false and such claims are not viable as a matter of law.

**B.   Differential Treatment of Nominating Petition Signers**

Plaintiffs also broadly allege that the nominating petition

8

process violates the Equal Protection Clause because absentee ballots are not available for voters supporting minor political party candidates, as they are for major political party voters. In order to state a claim based on equal protection, plaintiffs must show that they are treated differently than similarly situated individuals. In re Kemp, 894 F.3d 900, 909 (8th Cir. 2018). "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." Id. (quotations marks and citation omitted). "Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." Id.

Here, plaintiffs claim that they are similarly situated to major political party voters because the nominating petition process is equivalent to the primary process for major political party voters. In making this claim, plaintiffs rely on the already rejected argument that the oath in the nominating petition precludes signers from later voting in the primary. In other words, because the nominating petition serves as the only method by which signers can participate in the primary process, they should be given the same rights and processes as major political party voters. As discussed, however, minor political party voters

are not precluded from participating in the primary process, therefore plaintiffs have failed to show that they are similarly situated to their major political party counterparts in relevant respects.  Further, the nominating process has a distinct purpose from that of the primary process.  The nominating process is designed to "demonstrate a certain level of support among the electorate before the minor party or candidate may obtain a place on the ballot."  Clements v. Fashing, 457 U.S. 957, 965 (1982). In contrast, the primary process is designed to determine which candidate from each major political party will be placed on the ballot.

Even if similarly situated, plaintiffs have failed to adequately allege that they are being treated differently in violation of the Equal Protection Clause.  Plaintiffs' primary concern appears to be the inability to participate in the nominating petition process in abstentia, whereas their major political party counterparts may vote in the primary by absentee ballot.  But Minnesota law allows signers of nominating petitions to fill out the petition form and send it to the candidate, which is akin to submitting an absentee ballot.  Minn. Stat. § 204B.07, subdiv. 1.  A newly enacted Minnesota law further undermines plaintiffs' allegations in this regard.  As of May 12, 2020, election officials are required to "accept electronic mail,

facsimile, or other electronic submissions of" nominating petitions, "including signatures collected electronically." 2020 Minn. Laws ch. 77, subdiv. 4; see ECF No. 30-1.

Plaintiffs also allege differential treatment because there is no process for nominating petition signers to challenge a determination by the Secretary that they are not eligible to vote, and thus not eligible to sign the petition. Plaintiffs note that in contrast, primary voters may address challenges to their registration at the polling place. Plaintiffs claim fails as a matter of law for, among other things, lack of standing. To establish the requisite injury in fact, plaintiffs must show that they suffered an "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks and citation omitted). Here, plaintiffs alleged injury is hypothetical at best. They claim that the Secretary may strike names from a nominating petition after determining that those individuals are not eligible voters. Yet plaintiffs have failed to even allege that the Secretary has ever done so or is somehow poised to do so.

Finally, plaintiffs claim that they are subject to differential treatment because people who sign the nominating petition are subject to possible public disclosure, whereas votes

11

for major political party candidates remain secret. Again, even assuming plaintiffs are similarly situated to their major political party counterparts, plaintiffs have failed to establish that the possibility of public exposure violates the constitution. They have cited to no cases or other authority to support their claim as it relates to nominating petitions and the public nature of their lawsuit belies their position.

### C.    Fourteen-Day Nominating Period

Plaintiffs also allege that the fourteen-day period in which minor political party candidates must secure the threshold number of signatures is unduly burdensome and cannot pass constitutional muster. In assessing this issue, the court considers the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and then identifies and evaluates the "precise interests put forward by the State as justifications for the burden imposed by its rule." Libertarian Party of N.D. v. Jaeger, 659 F.3d 687, 693-94 (8th Cir. 2011). "In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." Id. at 694.

The Secretary has a recognized and important interest in mandating a "preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot." Jenness v. Fortson, 403 U.S. 431, 442 (1970).  The question, then, is whether plaintiffs have adequately alleged that they are unduly burdened by the temporal limits placed on their ability to collect the required number of signatures. They have not.  The record shows, and plaintiffs do not dispute, that they are required to secure signatures from a very small fraction of the number of eligible voters within the fourteen-day period.  For example, for a congressional candidate, plaintiffs are required to secure 1,000 signatures out of an estimated 508,826 voting-eligible population. Def.'s Supp. Mem., ECF No. 13, at 19. Broken down to a daily quota, plaintiffs must secure 71.4 signatures per day within the fourteen-day period for a congressional seat.  Id. at 22.  The United States Supreme Court has held that requiring signatures at a rate of 400 per day did not impose a substantial burden. Am. Party of Tex. v. White, 415 U.S. 767, 786 (1974).  If 400 signatures in a day is not a substantial burden, then neither is 71.  This claim also fails as a matter of law.[4]

---

[4] As with the oath requirement, plaintiffs state that they are abandoning "as separate claims" any challenge to the

**II.   Motion for Summary Judgment**

Because the court grants the Secretary's motion to dismiss the amended complaint for failure to state a claim, the court must deny plaintiffs' motion for summary judgment as moot.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion to dismiss [ECF No. 9] is granted; and

2.   The motion for summary judgment [ECF No. 11] is denied as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 29, 2020

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court

---

requirement that they secure a threshold number of signatures within the fourteen-day period. Pls.' Opp'n Mem., ECF No. 25, at 24. Again, because the amended complaint makes no separate claim regarding this requirement, the court assumes that plaintiffs are in fact abandoning their challenge to the number requirement.

14